UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHNNY DUPIGNY,
    *Plaintiff*,

v.

AMONDA HANNAH *et al.*,
    *Defendants*.

No. 3:20-cv-00836 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

    Plaintiff Johnny Dupigny is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC").[1] He has filed a complaint *pro se* and *in forma pauperis* against numerous DOC officials alleging that they have violated his rights by preventing him from buying an electric hair dryer in order to dry the long dreadlocks of his hair. He claims in principal part that the DOC's policy which bars male inmates but not female inmates from having hair dryers violates his right of equal protection and that the denial of a hair dryer burdens the exercise of his religion which does not allow him to cut his hair. For the reasons set forth below, I will allow some of Dupigny's claims to proceed.

**BACKGROUND**

    The complaint names the following six defendants: former DOC Commissioner Rollin Cook, District Administrator William Mulligan, Warden Amonda Hannah, Deputy Warden Egan, Captain Gordils, and Commissary Supervisor Fontano. These defendants are named in

---

[1] Although the complaint spells the name of the plaintiff as Johnny Dupigny, the DOC's on-line database for the inmate number that is listed in the complaint spells his name as Johnny Dupigney. His last name also appears as Dupigney in reported decisions about his conviction and imprisonment. *See, e.g, Dupigney v. Comm'r of Correction*, 183 Conn. App. 852 (2018). If Dupigny has misspelled his name in the complaint, he should file a notice with the Court requesting a correction.

their individual capacity for money damages and in their official capacity for injunctive relief. Doc. #1 at 1-3 (¶¶ 1-7).[2]

The following facts as alleged in the complaint are accepted as true only for purposes of this ruling. Dupigny is an African American male who is incarcerated at Garner Correctional Institution. *Id.* at 1 (¶1), 3 (¶ 9). The complaint alleges that "[a]s a part of Dupigny's religious and ethnic beliefs, he does not cut his hair and instead maintains his hair in dreadlocks that reach down to his lower back and buttocks (the locks)." *Id.* at 3 (¶ 10). The dreadlocks are thick strands or ropes of hair that are tightly wound together. *Ibid.* (¶ 11). He must wash his dreadlocks regularly to maintain health and hygiene. *Ibid.* (¶ 12). While incarcerated, he uses a towel to dry the exterior of his dreadlocks. *Ibid.* (¶ 13). He cannot adequately dry the interior of the dreadlocks using just a towel because the dreadlocks are tightly wound together. *Ibid.* (¶ 14).

After Dupigny dries the exterior of his hair with a towel, it can take five or six hours for the dreadlocks to completely dry, and this causes them to become moldy and smelly as well as to become brittle and to break off in large sections and strands. *Ibid.* (¶¶ 15-16). Excess moisture at the base of his scalp causes an itchy rash and inflammation that sometimes lasts for days or weeks. *Id.* at 4 (¶ 17). The moldy and musty smell from Dupigny's dreadlocks also causes serious conflicts with his cellmates *Ibid.* (¶ 18). This puts Dupigny "at great risk of severe bodily injury and death" as well as causing "great stress and severe migraine headaches." *Ibid.*

In early May 2020, Dupigny discovered that the DOC permits female inmates to purchase hair dryers from the commissary but does not permit male inmates to do so. *Ibid.* (¶

---

[2] The complaint misspells the name of defendant Amonda Hannah as Amondah Hannah. The Clerk of Court shall amend the case caption to correctly spell this defendant's name.

19). According to the complaint, "[t]he policy is authorized by Cook and Mulligan, and is sanctioned and condoned by Hannah, Egan, Fontano and Gordils." *Ibid.* (¶ 21).

Dupigny wrote inmate requests in early May 2020 to Gordils (the housing unit manager at Garner) and Egan (the deputy warden at Garner), but he was advised by both of them that hair dryers are only allowed for female inmates. *Ibid.* (¶ 23). They advised him that if he had concerns then he should "write medical." *Ibid.* (¶ 24). The medical department does not issue inmates hair dryers or perform hair drying services. *Ibid.* (¶ 25).

Dupigny filed a grievance with Hannah (the warden at Garner) but was told that the response he received from Gordils was appropriate. *Id.* at 5 (¶ 29). He appealed the denial of this grievance to Mulligan (the DOC's district administrator) who responded that "electric hair dryers are not allowed within a facility housing the male population." *Ibid.* (¶ 31).

The complaint alleges violations of several of Dupigny's federal constitutional rights including his right to equal protection under the Fourteenth Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, and his right to free exercise of his religion under the First Amendment. The complaint also alleges violations of the Civil Rights Act under 42 U.S.C. § 1985 and § 1986 as well as under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §2000cc. *Id.* at 6-9. [3]

---

[3] The complaint further alleges state law claims which I will not address in this initial review order. If there were no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, to the extent there are viable federal law claims, then the validity of any accompanying state law claims may be appropriately addressed by the defendants in the usual course by way of a motion to dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional circumstances that would warrant dismissal of a claim.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Equal Protection*

Dupigny claims that the DOC's alleged policy which bars him from having a hair dryer while allowing female inmates to have a hair dryer violates the Equal Protection Clause of the Fourteenth Amendment. "The Equal Protection Clause…commands that no State shall 'deny to any person within its jurisdiction the equal protection of law,' which is essentially a direction that all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). When the

government classifies on the basis of sex or gender, the classification is subject to heightened, intermediate scrutiny that requires the government to show that the classification serves an important governmental objective. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988); *Dale v. Barr*, 967 F.3d 133, 139 (2d Cir. 2020).

Here, the complaint alleges a DOC policy that intentionally discriminates on the basis of gender and for reasons that do not serve an important governmental objective. Accordingly, the complaint alleges a plausible claim for relief under the Equal Protection clause.

### *Eighth Amendment*

Dupigny claims that the denial of a hair dryer amounts to cruel and unusual punishment in violation of the Eighth Amendment. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm to the safety or serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. The objective component requires no less than "'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Horace v. Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (quoting *Hathaway v. Coughlin*, 37 F.3d 33, 66 (2d Cir. 1994)).

Second, the prisoner must allege that a defendant prison official acted with an actual awareness of a substantial risk that serious harm to the inmate will result. *See Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120,

5

127 (2d Cir. 2012). The official must have acted more than merely negligently but instead with a subjective state of mind that is the equivalent of criminal recklessness. *See Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019).

As to his claim for deliberate indifference to his serious medical needs, Dupigny does not allege facts to show a medical condition that is severe enough to satisfy the objective medical need requirement for an Eighth Amendment claim. He alleges only that that the excess moisture left on his scalp after washing his dreadlocks and being unable to dry them without a hair dryer results in excess moisture in his hair for five to six hours and that this causes an itchy rash and inflammation that lasts for days and weeks. Doc. #1 at 3, 4 (¶¶ 15, 17). Nor does he allege subjective recklessness by any of the defendants as to his medical needs. To the extent that two of the defendants—Gordils and Egan—advised Dupigny to "write medical" about his "health and hygienic needs," Doc. #1 at 4 (¶ 24), this advice to seek medical assistance does not suggest that they were deliberately indifferent.

As to his claim for deliberate indifference to his safety, even if I assume that the complaint adequately alleges an objectively serious risk of harm from its conclusory description of "serious conflicts" with cellmates that causes Dupigny stress and severe migraine headaches, Doc. #1 at 4 (¶ 18), the complaint does not allege that any of the defendants knew of these serious conflicts with his cellmates. Accordingly, the complaint does not validly allege a violation of the Eighth Amendment because it does not allege facts to plausibly establish that any of the defendants were deliberately indifferent to Dupigny's serious medical needs or to his safety.

*First Amendment and RLIUPA*

Dupigny alleges a denial of his First Amendment right to free exercise of religion as well as his statutory rights under RLUIPA. The First Amendment prohibits prison officials from substantially burdening prisoners in the exercise of their religious beliefs absent a reason to do so that is reasonably related to legitimate penological interests. *See Brandon v. Kintner*, 938 F.3d 21, 32 (2d Cir. 2019). Relatedly, RLUIPA states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018) (quoting 42 U.S.C. § 2000cc-1(a)); *see also Holland v. Goord*, 758 F.3d 215, 224 (2d Cir. 2014) (noting that RLUIPA allows for injunctive relief but not for money damages claims against state officers in their individual or official capacities).

The complaint alleges very little about Dupigny's religion. It alleges only that "[a]s a part of Dupigny's religious and ethnic beliefs, he does not cut his hair and instead maintains his hair in dreadlocks that reach down to his lower back and buttocks (the locks)." *Id.* at 3 (¶ 10). But affording the complaint a liberal construction and taking judicial notice of decisions that involve religion-based challenges to hair grooming practices, I conclude that the complaint adequately alleges for initial pleading purposes that the DOC policy barring Dupigny from safely maintaining his dreadlocks amounts to a substantial burden on his rights to free exercise of religion in violation of the First Amendment and RLIUPA. *See Holt v. Hobbs*, 574 U.S. 352 (2015) (upholding religion-based challenge under RLUIPA to prison grooming policy barring

prisoners from growing beards); *Reed v. Faulkner*, 842 F.2d 960, 962 (7th Cir. 1988) (Posner, J.) (describing Rastafarian religion barring cutting of hair and growing of dreadlocks). Accordingly, I will allow the First Amendment and RLUIPA claims to proceed.

### *Civil Rights Act, 42 U.S.C. §§ 1985 and 1986*

Dupigny alleges violations of 42 U.S.C. §§ 1985 and 1986. Section 1985 has three subsections. The first two subsections—1985(1) and 1985(2)—relate to conspiracies to prevent an officer from performing duties and conspiracies to obstruct justice. The allegations of the complaint do not implicate this kind of wrongful conduct. The third subsection—1985(3)—applies to conspiracies to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws, and precedent makes clear that the conspiracy must be motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *See Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Even assuming that Dupigny has alleged enough facts to qualify his claim under § 1985(3), all the defendants are members of the same organization, and therefore any conspiracy claim under § 1985(3) is barred by the intracorporate conspiracy doctrine. *See Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 n.14 (2d Cir. 2018); *Jones v. Wagner*, 2020 WL 4272002, at *5 (D. Conn. 2020).

As for any claim under 42 U.S.C. §1986, it necessarily fails because a violation of § 1986 may proceed only if a plaintiff is able to establish a predicate claim under § 1985. *See Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir. 2000). Accordingly, I will dismiss Dupigny's claims under 42 U.S.C. §§ 1985 and 1986.

*Personal involvement*

As noted above, I have concluded that Dupigny has alleged plausible claims for a violation of the Fourteenth Amendment, the First Amendment, and RLUIPA. But this raises the additional question of whether Dupigny has alleged sufficient facts to show that each one of the defendants is responsible for the alleged violations. "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, in order to "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v.* Bachman, -- F.3d --, 2020 WL 7687688, at *7 (2d Cir. 2020).

Dupigny has alleged enough facts to show the personal involvement of all of the defendants except Cook and Fontano. The complaint alleges only in the most conclusory terms that Cook "authorized" the hair dryer policy without any additional facts to indicate his knowledge or approval of the alleged policy. The complaint alleges only that Fontano was supervisor of the commissary but does not allege that Fontano took any action against Dupigny. *See Crespo v. Hurwitz*, 2020 WL 7021658, at *7 (E.D.N.Y. 2020) (allegations that particular defendants "'created, authorized, condoned, ratified, approved or knowingly acquiesced in the illegal, unconstitutional, and inhumane conditions' at the facility" were too conclusory to show personal involvement). Accordingly, I will allow the complaint to proceed only as to Dupigny's claims under the Fourteenth Amendment, the First Amendment, and RLUIPA against defendants Hannah, Mulligan, Egan, and Gordils.

9

**CONCLUSION**

For the reasons stated above, the Court enters the following orders:

(1) Dupigny's Fourteenth Amendment equal protection claim and First Amendment free exercise claim may proceed against Hannah, Mulligan, Egan, and Gordils in their individual capacities for money damages and in their official capacities for injunctive relief. Dupigny's RLUIPA claim may proceed against Hannah, Mulligan, Egan, and Gordils in their official capacities for injunctive relief. The Court DISMISSES all of Dupigny's other claims against all other defendants.

(2) The Clerk shall verify the current work addresses for the remaining defendants with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to those defendants at the confirmed addresses within **twenty-one (21) days of this Order**, and report to the Court on the status of the waiver requests by not later than the **thirty-fifth (35) day after mailing**. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(4) All defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5) The discovery deadline is **six months (180) days from the date of this Order.** The

parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this Order. The order can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(6) All motions for summary judgment shall be filed within **seven months (210 days) from the date of this Order.**

(7) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(8) If Dupigny changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Dupgny must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Dupigny has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Dupigny should also notify the defendants or defense counsel of his new address.

(9) Dupigny shall utilize the Prisoner E-Filing Program when filing documents with the Court. Dupigny is advised that the Program may be used only to file with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each

other by regular mail.

It is so ordered.

Dated at New Haven, Connecticut this 18th day of January 2021.

                                              /s/ *Jeffrey Alker Meyer*
                                              Jeffrey Alker Meyer
                                              United States District Judge